**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES EX REL. JOSE A.
HERRERA,
            *Plaintiff-Appellant,*

v.

DANKA OFFICE IMAGING COMPANY,
            *Defendant-Appellee.*

No. 03-1343

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-00-1702)

Argued: January 21, 2004

Decided: March 15, 2004

Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** John C. Maginnis, Washington, D.C., for Appellant. Russell James Gaspar, COHEN MOHR, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** William J. Hardy, KARALEKAS & NOONE, Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Jose A. Herrera, a *qui tam* relator, appeals the district court's grant of summary judgment in favor of Danka Office Imaging Co. (Danka) in this action alleging violations of the False Claims Act, 31 U.S.C.A. §§ 3729-3733 (West 2003). Finding no error in the district court's disposition of the case, we affirm.

I.

Jose Herrera was an employee of Danka, a large distributor of photocopiers. Danka held a Federal Supply Service Schedule Contract for photocopiers with the General Services Administration. Under this contract, the Defense Automated Printing Service (DAPS) issued blanket purchase agreements (BPAs) to Danka. The first BPA between Danka and DAPS was in effect from September 23, 1998, to May 18, 2001, and included a provision requiring Danka to pay a one-half of one percent (0.5%) "Fee for Service" (FFS) on the value of all sales made under that BPA. (J.A. at 187.) The BPA explicitly stated that "[a]ll prices . . . shall include" the FFS. (J.A. at 187.) Pursuant to the FFS provision, Danka was to provide DAPS with a quarterly report of its sales under the BPA and remit quarterly payments of the FFS to DAPS. The BPA stated that "[i]f Danka fails to remit [payment] . . . the amount shall be considered a contract debt to the United States Government." (J.A. at 187.) The BPA also explained that the "Government may exercise all its rights under this BPA, including withholding or setting of payments and interest on the debt . . . and may result in termination of the BPA." (J.A. at 187.)

Nothing in the record reflects that Danka was required to certify that it was in compliance with the FFS provision, and none of its invoices included such a certification. Danka failed to file its quarterly reports and also failed to remit quarterly payments of the FFS

to DAPS. DAPS never contacted Danka about its failure to follow the FFS provision, and Danka is currently conducting a manual review of its records to determine its contract debt to DAPS.

Acting as a *qui tam* relator, Herrera filed a complaint under seal, on October 13, 2000, in the United States District Court for the Eastern District of Virginia. On January 14, 2002, the United States gave notice that it was declining to intervene in the action. Herrera served Danka with his first amended complaint on April 19, 2002, alleging four violations of the False Claims Act. Relevant here, Herrera alleged that Danka violated the False Claims Act because it "failed to pay [DAPS] the [FFS] it owes for its sales to [DAPS] from the [Federal Supply Schedule] contract because it had no compliance system in place to audit such sales to an agency such as [DAPS]." (J.A. at 24) (the FFS Claim). According to Herrera, the FFS claim includes both a direct false claim and a false implied certification claim.[1] The district court granted Danka's motion for summary judgment as to the FFS claim on January 22, 2003.[2] Herrera now appeals.

## II.

We review *de novo* the entry of summary judgment in favor of Danka. *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[1] The specifics of the direct false claim and the false implied certification claims are discussed in the text *infra*.

[2] Herrera argues that the district court dismissed his complaint pursuant to Federal Rule of Civil Procedure 9(b), and thus, that we should determine only whether Herrera's complaint states a claim upon which relief may be granted. (Appellant's Br. at 7.) This argument is without merit. The district court did find that Herrera failed to plead his false implied certification claim with particularity as required by Federal Rule of Civil Procedure 9(b). The district court also held, however, that even if the false implied certification claim had been pleaded with particularity, Danka was entitled to summary judgment on the merits. Accordingly, the district court entered summary judgment for Danka on the entire FFS claim.

as to any material fact." Fed. R. Civ. P. 56(c) (West 1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *American Legion*, 239 F.3d at 605. A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (internal quotation marks omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The False Claims Act, 31 U.S.C.A. §§ 3729- 3733 (West 2003), is intended to aid the government in "uncover[ing] fraud and abuse by unleashing a posse of ad hoc deputies to uncover and prosecute frauds against the government." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted). To that end, the False Claims Act permits *qui tam* relators to file suit on behalf of the United States against individuals who have violated § 3729. 31 U.S.C.A. § 3730(b). Section 3729(a)(1) creates liability against any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C.A. § 3729(a)(1).

On appeal, Herrera presents two theories of liability under § 3729(a)(1). First, Herrera contends that each invoice Danka submitted to its governmental customers under the BPA violated § 3729(a)(1) because the invoices included the FFS that Danka was not going to pay. This type of claim is called a "direct false claim." To prove a direct false claim, Herrera must establish that Danka made a claim for payment or approval by the government, that the claim was false or fraudulent, that Danka acted "knowingly" in presenting the false claim, and that the falsity was material. *Harrison*, 176 F.3d at 784-85. Herrera cannot prove this first theory of liability because Danka did not submit a false or fraudulent claim. It is axiomatic that "a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government." *Id.* at

785. The BPA required Danka to include the FFS in all of its invoices, and then to remit the FFS on a quarterly basis to DAPS. Thus, Danka did not submit a false claim to its governmental customers by including the FFS in its invoice prices; the contract, by its own terms, required the FFS to be included. Danka's subsequent failure to remit the FFS to DAPS may have breached its contract with DAPS, but Danka was required to include the FFS in its invoices, and Danka did not submit a false claim by following that requirement.

Second, Herrera argues that each invoice Danka submitted to a governmental customer under the BPA acted as an implied certification that Danka intended to comply with the FFS provision. To the extent that the theory is valid, the theory of implied certification creates liability under § 3729(a)(1) where "submission of invoices and reimbursement forms constituted implied certifications of compliance with the terms of the particular government program."[3] *Harrison*, 176 F.3d at 786 & n.8. Courts that "have been ready to infer certification from silence" require the relator to at least show "certification was a prerequisite to the government action sought." *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000). For example, in *Harrison* we held that even assuming a false implied certification claim was viable, the relator's implied certification claim failed because the relator "ha[d] never asserted that such implied certifications were in any way related to, let alone prerequisites for, receiving continued funding." *Harrison*, 176 F.3d at 793. Likewise, the BPA at issue here does not condition payment of Danka's invoices on a certification that Danka will remit the FFS. Thus, Herrera's theory of implied certification fails as well, and the district court was correct to grant Danka summary judgment as to that theory of recovery. *Siewick*, 214 F.3d at 1376.

---

[3]We have previously noted that claims of implied certification were "questionable" in this circuit. Given our resolution of this issue we need not decide whether claims for implied certification are viable under the False Claims Act. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787 n.8 (4th Cir. 1999).

### III.

Because Herrera cannot show that Danka submitted a false claim or that payment of Danka's invoices was conditioned upon Danka's certification that it would remit the FFS, the district court was correct to grant summary judgment to Danka. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*